JWB

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| John Mattox, | ) | No. CV 1-08-1265-FRZ |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| A. Hedgpeth, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

        Before the Court is Plaintiff's Motion for Reconsideration of the Court's June 26, 2009 judgment (Doc. # 17).  The Court will grant the motion.

**I.    Background**

        Plaintiff filed his original Complaint in this action on August 28, 2008 (Doc. # 1). This case was reassigned to the undersigned judge on November 24, 2008 (Doc. # 9).  By Order dated March 4, 2009, the Court dismissed Plaintiff's Complaint with leave to amend (Doc. # 10).  The Court provided Plaintiff with 30 days to file a First Amended Complaint. Thereafter, Plaintiff sought, and was granted, two additional extensions of time to file his amended pleading; Plaintiff's First Amended Complaint was due by June 3, 2009 (Doc. ## 11-14).  When no amended pleading was filed, the Court entered judgment on June 26, 2009 (Doc. # 15).

        On July 15, 2009, Plaintiff filed a Motion for Reconsideration (Doc. # 17).  In his motion, Plaintiff states that he submitted a First Amended Complaint to the Court, but it was

JDDL

1   opened as a new action—CV 09-0816-LJO-GSA—and not entered in this action.[1]  Plaintiff

2   then submitted another amended complaint on May 31, 2009, which was docketed in the new

3   action.  Having been informed that the new action was duplicative of this action and opened

4   in error, District Judge O'Neill terminated CV 09-0816-LJO-GSA (Doc. # 11, CV 09-0816-

5   LJO-GSA).  The Court will grant Plaintiff's Motion for Reconsideration and order that the

6   First Amended Complaint filed on June 3, 2009 in CV 09-0816-LJO-GSA (Doc. # 4) be filed

7   in this action as Plaintiff's First Amended Complaint (FAC).  The Court will proceed to

8   screen Plaintiff's FAC.

9   **II.    Statutory Screening of Prisoner Complaints**

10          The Court is required to screen complaints brought by prisoners seeking relief against

11   a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C.

12   § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised

13   claims that are legally frivolous or malicious, that fail to state a claim upon which relief may

14   be granted, or that seek monetary relief from a defendant who is immune from such relief.

15   28 U.S.C. § 1915A(b)(1), (2).

16          A pleading must contain a "short and plain statement of the claim *showing* that the

17   pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not

18   demand detailed factual allegations, "it demands more than an unadorned, the-defendant-

19   unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

20   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

21   statements, do not suffice."  Id.

22          "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a

23   claim to relief that is plausible on its face.'"  Id. (quoting Bell Atlantic Corp. v. Twombly,

24   550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content

25   that allows the court to draw the reasonable inference that the defendant is liable for the

26   misconduct alleged."  Id.  "Determining whether a complaint states a plausible claim for

27

28   _____

[1] Plaintiff did not write this case number on the First Amended Complaint.

1    relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial

2    experience and common sense."  Id. at 1950.  Thus, although a plaintiff's specific factual

3    allegations may be consistent with a constitutional claim, a court must assess whether there

4    are other "more likely explanations" for a defendant's conduct.  Id. at 1951.

5    **III.   Complaint**

6          In his FAC, Plaintiff sues the following Defendants: (1) North Kern State Prison

7    (NKSP) NKSP CCII E. Martinez, (2) NKSP CCI Harris, (3) Pleasant Valley State Prison

8    (PVSP) Correctional Guard R. Montez, (4) NKSP Correctional Sergeant Castrol, (5) NKSP

9    Captain Steadman, (6) NKSP Lieutenant Marquez, (7) PVSP Correctional Guard Paco

10   Mendoza, (8) NKSP Sergeant Ervan, (9) John and Jane Does 1-12 (responsible parties at

11   Medical/Dental and outside specialists), (10) NKSP Warden Lee Ann Chrones, (11) PVSP

12   Chief Dental Officer Dr. Hernon, (12) PVSP Acting Chief Dental Officer Dr. Alexander,

13   (13) John and Jane Does (all responsible parties at Medical/Dental), (14) PVSP Warden

14   James Yates, (15) Oral Surgeon Dr. Salahddin, and (16) Acting Medical Director Dr. F.

15   Igbinosa (FAC at 2-3).

16         Plaintiff presents five claims for relief.  In Count I, Plaintiff claims that on September

17   14, 2005, he decided to send excess United States stamps home.  Plaintiff placed the stamps

18   in an envelope and gave it to Correctional Officer Coody (not a Defendant), who inspected,

19   sealed, and dated the envelope.  On September 15, 2005, Castrol confiscated this envelope

20   and its contents.  Further, on September 18, 2005, Castrol took all of Plaintiff's property.

21   Plaintiff was told to pick up his property on September 19, 2005, and he noticed that his legal

22   materials were taken out of the original envelopes and papers were missing.  Plaintiff also

23   noticed that this family photos were ripped and defaced and he never received his glasses,

24   shoes, or clothing.  Plaintiff asserts that he has no meaningful post-deprivation remedy.  As

25   a result, Plaintiff claims that he lost time working on his appeals, which were ultimately

26   dismissed (FAC at 3-3a).

27         In Count II, Plaintiff asserts that Harris and Martinez retaliated against Plaintiff by

28   threatening to have him transferred on two different occasions.  Plaintiff states that he had

1   been living at NKSP since June 1999.  On December 13, 2005, Plaintiff claims that he was

2   taken out of sequence to a classification hearing.  Plaintiff asserts that he was reclassified

3   because he filed a staff complaint against Castrol.  Thereafter, Plaintiff asserts that he was

4   not placed in Administrative Segregation, but was transferred to a building with a hostile

5   environment, where he was assaulted.  Plaintiff claims that he told Ervan and Marquez that

6   he was afraid to go to the new building, but they dismissed his concerns (id. at 4-4a).

7        In Count III, Plaintiff claims that the day after he was assaulted on December 18,

8   2005, he was taken to an outside hospital where he learned that he received multiple facial

9   fractures, loss of incisors, cuts, and abrasions.  Plaintiff claims that he was then placed in

10  Administrative Segregation and did not receive treatment for his injuries.  Thereafter,

11  Plaintiff alleges that on January 20, 2006, he was examined by Dr. Smith and sent to the

12  PVSP prison hospital, where he received medication, x-rays, and a liquid diet.  Plaintiff

13  asserts that he was examined by numerous doctors at PVSP who inquired as to why Plaintiff

14  did not receive treatment sooner (id. at 5-5b).

15       In Count IV, Plaintiff asserts that on January 11, 2007, he filed a grievance against

16  Montez and another unnamed guard, but later withdrew that grievance.  Thereafter, on

17  August 5, 2007, Montez retaliated against Plaintiff by confiscating his handkerchief that was

18  used to cover his recent surgery site.  Plaintiff claims that he explained to Montez that his

19  medical orders require him to keep his head covered from the sun.  Montez then proceeded

20  to grab Plaintiff, turn him around and started kicking Plaintiff's legs.  Plaintiff claims that

21  Montez never returned his handkerchief and caused permanent damage by kicking his legs

22  (id. at 6-6a).

23       Finally, in Count V, Plaintiff claims Mendoza has been "harassing and using profane

24  language" towards Plaintiff since 2006.  Plaintiff claims that on May 11, 2007—after

25  Plaintiff filed a grievance against Mendoza—he "really started retaliating and targeting"

26  Plaintiff.  Plaintiff asserts that Mendoza "continues to target and harass and treat Plaintiff

27  with deliberate indifference" (id. at 7).

28  ///

1    **III.    Failure to State a Claim**

2         **A.    Count I**

3              ***1.    Failure to Link Castrol with Claim***

4    Castrol is the only named Defendant in Count I.  Plaintiff asserts that Castrol is

5    responsible for his guards' actions with respect to the loss of his property.  This allegation,

6    however, is insufficient to state a constitutional claim.  To state a valid claim under § 1983,

7    plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a

8    defendant and show an affirmative link between the injury and the conduct of that defendant.

9    See Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).  There is no *respondeat superior*

10   liability under § 1983, and therefore, a defendant's position as the supervisor of persons who

11   allegedly violated Plaintiff's constitutional rights does not impose liability.  Monell v. New

12   York City Department of Social Services, 436 U.S. 658, 691-92 (1978); Hamilton v. Endell,

13   981 F.2d 1062, 1067 (9th Cir. 1992); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

14   "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that

15   each Government-official defendant, through the official's own individual actions, has

16   violated the constitution."  Iqbal, 129 S. Ct. at 1948.  Plaintiff offers no facts regarding

17   Castrol's direct involvement with the loss of Plaintiff's property.

18              ***2.    Adequate Post-Deprivation Remedy***

19   Plaintiff alleges his property was intentionally taken incident to a cell search.  Further,

20   Plaintiff contends that no "meaningful" post-deprivation remedy exists.  Due process claims

21   related to prisoner property commonly arise when property is taken or destroyed by random

22   and unauthorized conduct of a prison official, without an opportunity for the State to provide

23   meaningful procedural due process.  Under Supreme Court doctrine in Parratt v. Taylor, 451

24   U.S. 527, 537 (1981), and Hudson v. Palmer, 468 U.S. 517, 530-36 (1984), neither

25   intentional or negligent deprivations of property give rise to a due process claim so long as

26   the State provides an adequate post-deprivation remedy.  Thus, where the state provides a

27   meaningful post-deprivation remedy, only authorized, intentional deprivations constitute

28   actionable violations of the Due Process clause.  Thus, the availability of an adequate state

1  post-deprivation remedy, such as a state tort action, for unauthorized deprivations precludes

2  a claim for violation of due process.  <u>King v. Massarweh</u>, 782 F.2d 825, 826 (9th Cir. 1986).

3  California law provides an adequate post-deprivation remedy for negligent or intentional, but

4  unauthorized, deprivations of property.  <u>Barnett v. Centoni</u>, 31 F.3d 813, 816-17 (9th Cir.

5  1994) (citing Cal. Gov't Code §§ 810-895).  Plaintiff provides no facts or argument to

6  support *why* California's post-deprivation remedy is not meaningful or adequate.  In short,

7  Plaintiff alleges an intentional, unauthorized deprivation of property for which there is an

8  adequate state law remedy.  He therefore fails to state a claim for violation of due process.

9                                  ***3.    Access to the Court***

10        To the extent that Plaintiff claims he was denied access to the courts as a result of his

11  property claim, that fails because he has not alleged an actual injury or any facts to support

12  *how* he was denied access to the courts.  <u>Lewis v. Casey</u>, 518 U.S. 343, 346 (1996); <u>Phillips</u>

13  <u>v. Hust</u>, 477 F.3d 1070, 1075 (9th Cir. 2007).

14       **B.    Count II**

15                 ***1.    Insufficient Facts to Support Retaliation Claim***

16        In Count II, Plaintiff first alleges that Harris and Martinez retaliated against him by

17  having him transferred to another unit because of his staff grievance against Castrol.

18  Plaintiff does not explain or provide any detail, however, regarding *how* Harris or Martinez

19  had any knowledge about the staff complaint.  Because a viable claim of First Amendment

20  retaliation must include an allegation that a defendant took an adverse action against an

21  inmate *because of* protected conduct, and there are no facts to support how Harris or

22  Martinez knew of the Castrol complaint, Plaintiff fails to state a retaliation claim against

23  Harris or Martinez.  <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005); <u>see</u>

24  <u>also</u> <u>Hines v. Gomez</u>, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims require an inmate

25  to show that (1) the prison official acted in retaliation for the exercise of a constitutionally-

26  protected right and (2) the action "advanced no legitimate penological interest").

27  ///

28  ///

### 2.    *No Right to Particular Classification*

Further, to the extent that Plaintiff claims his reclassification was violative of his constitutional rights, that fails to state a claim. A prisoner has no constitutional right to enjoy a particular security classification or a particular housing location. <u>Meachum v. Fano</u>, 427 U.S. 215, 224-25 (1976) (no liberty interest protected by the Due Process Clause is implicated in a prison's reclassification and transfer decisions). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." <u>Montanye v. Haymes</u>, 427 U.S. 236, 242 (1976).

### 3.    *Insufficient Facts to Support Threat to Safety Claim*

Plaintiff also alleges in Count II that he told Ervan and Marquez that he feared being transferred to another unit because it was a hostile environment. To state a claim under the Eighth Amendment for a threat to health and safety, a prisoner must allege that a defendant was deliberately indifferent to a substantial risk of serious harm. <u>Farmer v. Brennan</u>, 511 U.S. 825, 828 (1994). Plaintiff claims that he feared being transferred to the new building because it had a "hostile environment." But that is insufficient to put Ervan and Marquez that Plaintiff faced a substantial risk of serious harm. Further, Plaintiff alleged that Ervan and Marquez "threatened" him when he expressed his fear. But he does not articulate what that threat was and, in any event, Plaintiff does not allege that Ervan or Marquez took any action against Plaintiff. For these reasons, Plaintiff fails to state a claim against Ervan and Marquez in Count II.

### 4.    *Insufficient Facts to Support Deliberate Indifference Claim*

Plaintiff also claims in Count II that he was placed in Administrative Segregation for 26 days without treatment for injuries he sustained in an assault on December 18, 2005. But Plaintiff fails to link this delay in treatment with any named defendant. <u>See</u> <u>Rizzo v. Goode</u>, 423 U.S. 362, 371-72, 377 (1976) (to state a valid claim under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an

1   affirmative link between the injury and the conduct of that defendant).  Consequently, this

2   allegation fails to state a claim.

3              **5.    *Failure to State a Claim against Steadman and Chrones***

4              In Count II, Plaintiff alleges that Steadman personally participated in retaliating

5   against him.  But Plaintiff does not allege any facts to support what action Steadman took

6   that was retaliatory.  This is insufficient to state a claim.  See <u>Rizzo</u>, 423 U.S. at 371-72,

7   377.  Plaintiff also alleges that Chrones is responsible for the supervision of her personnel,

8   and is therefore responsible for Plaintiff's claims.  But as stated, there is no *respondeat*

9   *superior* liability under § 1983.  <u>Iqbal</u>, 129 S. Ct. at 1948.

10             **C.    Count III**

11             In Count III, Plaintiff claims that he did not receive treatment for the injuries he

12  sustained in the assault on December 18, 2005 until January 20, 2006.  But as stated above,

13  Plaintiff has not linked his delay in treatment with any named Defendant because he has not

14  specifically named any Defendant and what that individual did to delay or interfere with his

15  treatment.  Further, to the extent that Plaintiff claims that being cuffed to a hospital bed after

16  surgery caused him any injury, he also fails to link that decision with any Defendant or

17  explain how any individual would know it was a serious risk to Plaintiff's health to be cuffed

18  to the bed.  Plaintiff's claims in Count III will be dismissed.

19             **D.    Count V**

20             In Count V, Plaintiff asserts that Mendoza has been harassing and using profane

21  language towards Plaintiff since 2006.  Plaintiff also claims that after he filed a grievance

22  against Mendoza, the retaliation escalated.  These allegations are insufficient to state a claim,

23  however, because "[t]hreadbare recitals of the elements of a cause of action, supported by

24  mere conclusory statements, do not suffice."  <u>Iqbal</u>, 129 S. Ct. at 1949.  Plaintiff only makes

25  conclusory and unspecific assertions regarding Mendoza's retaliation.  Plaintiff does not

26  specifically articulate *how* Mendoza retaliated against Plaintiff or was deliberately indifferent

27  to his health or safety. As a result, Plaintiff fails to state a claim in Count V.

28  *///*

**IV.     Claims for Which an Answer Will be Required**

Plaintiff adequately states claims of deliberate indifference and excessive force against Montez in Count IV.  Montez will be required to answer.

**V.      Warnings**

      **A.      Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83-182(f) and 83-183(b) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

      **B.      Copies**

Plaintiff must submit an additional copy of every filing for use by the Court.  <u>See</u> LRCiv 5-133(d)(2).  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

      **C.      Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  <u>See</u> <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)      Plaintiff's Motion for Reconsideration (Doc. # 17) is **granted**.

(2)      The judgment entered on June 26, 2009 is hereby **vacated** and this case is ordered **reopened**.

(3)      The First Amended Complaint filed at Doc. # 4 in CV 09-0816-LJO-GSA must be filed as the First Amended Complaint in this action.

(4)      Counts I, II, III, and V of the First Amended Complaint and Defendants Martinez, Harris, Castrol, Steadman, Marquez, Mendoza, Ervan, John and Jane Does 1-12 (responsible parties at Medical/Dental and outside specialists), Chrones, Hernon, Alexander,

1  John and Jane Does (all responsible parties at Medical/Dental), Yates, Salahddin, and
2  Igbinosa are **dismissed** without prejudice.

3      (5)    Defendant Montez must answer Count IV of the First Amended Complaint

4      (6)    The Clerk of Court must send Plaintiff a service packet including the First
5  Amended Complaint, this Order, a Notice of Submission of Documents form, an instruction
6  sheet, and copies of summons and USM-285 forms for Defendant Mendoza.

7      (7)    Within **30 days** of the date of filing of this Order, Plaintiff must complete and
8  return to the Clerk of Court the Notice of Submission of Documents.  Plaintiff must submit
9  with the Notice of Submission of Documents: a copy of the First Amended Complaint for
10 each Defendant, a copy of this Order for each Defendant, a completed summons for each
11 Defendant, and a completed USM-285 for each Defendant.

12     (8)    Plaintiff must not attempt service on Defendants and must not request waiver
13 of service.  Once the Clerk of Court has received the Notice of Submission of Documents
14 and the required documents, the Court will direct the United States Marshal to seek waiver
15 of service from each Defendant or serve each Defendant.

16     (9)    **If Plaintiff fails to return the Notice of Submission of Documents and the**
17 **required documents within 30 days of the date of filing of this Order, the Clerk of**
18 **Court must, without further notice, enter a judgment of dismissal of this action without**
19 **prejudice.** See **Fed. R. Civ. P. 41(b).**

20     DATED this 20th day of October, 2009.

FRANK R. ZAPATA
United States District Judge

JDDL

- 10 -