IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| John Dean Mattox, | ) | No. CV 1:08-1265-TUC-FRZ |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| E. Martinez, et al., | ) | |
| Defendants. | ) | |

Pending before the Court is Defendant Montez' motion for summary judgment. For the reasons stated below, the motion is granted.[1]

**STANDARD OF REVIEW**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing

---

[1] Plaintiff was given Rand notices in the Scheduling Order, by Defendant upon filing the motion for summary judgment, and by the Court after Defendant filed their motion for summary judgment.

1  party who must demonstrate the existence of a factual dispute and that the fact in contention
2  is material, i.e., a fact that might affect the outcome of the suit under the governing law,
3  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine,
4  i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving
5  party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir.
6  1995). Rule 56(c) provides that "[a] party asserting that a fact cannot be or is genuinely
7  disputed must support the assertion by: (A) citing to particular parts of materials in the record
8  . . . or (B) showing that the materials cited do not establish the absence or presence of a
9  genuine dispute, or that an adverse party cannot produce admissible evidence to support the
10 fact." An issue of fact must be genuine. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio
11 Corp., 475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue
12 of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to
13 require a jury or judge to resolve the parties' differing versions of the truth at trial." First
14 Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

15   When considering a summary judgment motion, the court examines the pleadings,
16 depositions, answers to interrogatories, and admissions on file, together with the affidavits
17 or declarations, if any. See Fed. R. Civ. P. 56(c). At summary judgment, the judge's
18 function is not to weigh the evidence and determine the truth, but to determine whether there
19 is a genuine issue for trial. Anderson, 477 U.S. at 249. The evidence of the non-movant is
20 "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255
21 (emphasis added). But, if the evidence of the non-moving party is merely colorable or is not
22 significantly probative, summary judgment may be granted. Id. at 248-49.

23 **BACKGROUND**

24   Plaintiff filed a pro se First Amended Complaint pursuant to 42 U.S.C. § 1983 alleging
25 numerous claims against numerous defendants. Pursuant to a Screening Order, all
26 Defendants and claims were dismissed except a claim for deliberate indifference to medical
27 needs and excessive force against Correctional Officer ("CO") Montez. As discovery has
28 closed, Montez has filed the motion at bar seeking dismissal of these claims.

1    Plaintiff is a prisoner at Pleasant Valley State Prison ("PVSP") which is part of the
2 California Department of Corrections and Rehabilitation ("CDCR").  During the events at
3 issue in 2007, Montez was a CO at PVSP while Plaintiff was imprisoned at that facility.
4    In February of 2007, Plaintiff received facial-skeletal surgery; to close the wound related
5 to the surgery, Plaintiff received stitches and staples to the affected area.  Post-surgery,
6 Plaintiff had problems with blood clotting in his legs, experienced swelling in his legs, and
7 was diagnosed with a deep vein thrombosis ("DVT") in his left leg.  In March of 2007, the
8 stitches and staples were removed, and medical personnel directed Plaintiff to keep the
9 affected area covered to protect against sun exposure and scarring.  Upon removal of the
10 stitches and staples, medical personnel provided Plaintiff with a sheet-like material to cover
11 the area.  Thereafter, Plaintiff ordered a white handkerchief to cover the area; on July 30,
12 2007, Plaintiff received the handkerchief and began wearing it over his head such that it
13 covered his forehead, head, and was tied above and behind his ears.  On August 5, 2007, CO
14 Montez encountered Plaintiff while he was wearing his handkerchief, stated that it was
15 unauthorized head gear, and asked him if he had a "chrono" (i.e., a written authorization
16 issued by the prison) from medical personnel specifically authorizing him to wear the
17 handkerchief at PVSP.  While Plaintiff explained the problems associated with his surgery,
18 and that medical personnel directed him to cover the affected area, Plaintiff did not have a
19 chrono specifically authorizing him to keep a handkerchief on his head to cover the post-
20 surgery site.  As Plaintiff did not have such a chrono, CO Montez confiscated the
21 handkerchief.
22    Later that same day, on August 5, 2007, Plaintiff was accompanied by two other prisoners
23 when he encountered Montez again, and attempted to explain his medical situation in an
24 effort to get his handkerchief back from Montez.
25    According to Plaintiff, Montez would not listen to him; Plaintiff then calmly stated that
26 Montez was abusing his authority and asked if he was retaliating for a previous internal
27
28

prison grievance[2] Plaintiff filed against Montez. In response, Montez stated "I'll show you how I abuse my authority", grabbed Plaintiff, turned him around, kicked his legs to spread them further apart, patted him down during a body search, and did not find any weapons.[3]

Thereafter, on August 14, 2007, Plaintiff obtained a chrono from medical personnel specifically stating that Plaintiff could wear a handkerchief on his head. On August 16, 2007, Plaintiff requested and secured a meeting with Sergeant Mays regarding the return of his handkerchief. CO Montez also was present at this meeting. Although Plaintiff now had a chrono, Sergeant Mays refused to return his handkerchief as the chrono was obtained after the handkerchief had been confiscated, and further indicated that wearing such a handkerchief violated prison rules.

## DISCUSSION[4]

### *Deliberate Indifference*

To prevail on a claim under the Eighth Amendment related to prison medical needs, a prisoner must demonstrate "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. Jett, 439 F.3d at 1096

---

[2] In December of 2006, Plaintiff filed a CDCR grievance against Montez for not making copies of some of Plaintiff's legal documents in another case.

[3] Plaintiff was not in any form of restraints (such as handcuffs) when he encountered Montez and sought the return of his handkerchief. According to Montez, when Plaintiff encountered him and sought the return of his handkerchief, Plaintiff was upset and argumentative, and yelled "you're only fucking with me in retaliation." Montez felt concerned for his safety and conducted a clothed body search to check for weapons.

[4] The Court notes that Montez argues that Plaintiff admitted there was no deliberate indifference or excessive force (i.e., by operation of the rules of procedure) because he failed to timely respond to certain discovery requests; the Court need not address this issue as the case is being dismissed on the merits.

(citations omitted). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health. <u>Farmer</u>, 511 U.S. at 837. Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. <u>Jett</u>, 439 F.3d at 1096.

As there is no genuine dispute as to any material fact pertaining to whether Montez was deliberately indifferent to any serious medical needs, this claim is dismissed. Plaintiff had his surgery in February of 2007, had the stitches and staples removed in March of 2007, obtained his handkerchief to cover the affected area in July of 2007, and the handkerchief was not confiscated by Montez until August of 2007. When Montez asked whether Plaintiff had a chrono from medical personnel specifically authorizing him to wear a handkerchief on his head at PVSP on August 5, 2007, Plaintiff admitted that he did not have such a chrono; as such, Montez confiscated the handkerchief. Montez' actions in confiscating the handkerchief do not demonstrate deliberate indifference to any serious medical needs.[5]

Furthermore, to the extent Plaintiff argues that Montez was deliberately indifferent to his serious medical needs inasmuch as his handkerchief was not returned <u>after</u> Plaintiff obtained a chrono on August 14, 2007 authorizing him to wear the handkerchief on the affected area, this issue is not properly before the Court. Plaintiff failed to properly plead these matters in his First Amended Complaint, and therefore Montez did not have proper notice that such allegations purportedly served as a basis for Plaintiff's deliberate indifference claim against him. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006). As such, Plaintiff's position relating to deliberate indifference after he obtained a chrono on August

---

[5] The Court notes that Plaintiff argues that prison regulations allow handkerchiefs to be worn on prisoners' heads, and as such, a chrono was not required. To support this assertion, Plaintiff attaches an excerpt of a prison manual. However, Plaintiff did not establish that this manual was in effect during the time period in question. Furthermore, even if he did, a review of the prison manual reflects that a handkerchief is simply listed in a grid of "miscellaneous" items that a prisoner can possess; also listed in the grid of "miscellaneous" items next to handkerchiefs are extension cords, greeting cards, and hot plates. The manual does not state that prisoners may wear handkerchiefs on their heads, or that they can wear handkerchiefs in any manner that obscure their face.

14, 2007 are not properly before the Court, and the Court declines to consider them. *See id.* To the extent Plaintiff's actions could be considered a motion for leave to amend to add these new grounds as a basis for his deliberate indifference claim, the untimely motion is denied in light of the fact that there is no good cause for a late amendment, discovery has closed, and the dispositive motion deadline has expired. *See id.*; *Coleman v. Quacker Oats Company*, 232 F.3d 1271, 1292-95 (9th Cir. 2000). Alternatively, assuming this issue was properly plead, summary judgment is still warranted. After Plaintiff obtained the relevant chrono on August 14, 2007, he requested a meeting with Sergeant Mays to seek the return of his handkerchief which occurred on August 16, 2007; Montez was also present at this meeting. Sergeant Mays denied the return of the handkerchief as Plaintiff only obtained the relevant chrono after the handkerchief was confiscated, and further stated his belief that it was in violation of prison rules despite the newly obtained chrono. While Montez may have agreed with and supported Sergeant Mays' decision, Sergeant Mays was the supervisor and ultimately made the final decision. There is nothing in the record indicating that Montez was in a position to overrule Sergeant Mays' decision. There is no viable claim against Montez.

Alternatively, the Court also notes that there is no medical documentation showing that the failure to allow Plaintiff to keep a handkerchief on his head more than five months after he had surgery, and more than four months after the stitches and staples were removed, could cause him to suffer further significant injury or the unnecessary and wanton infliction of pain. In addition, there is no medical documentation showing that any such harm actually occurred. The record also does not reflect that Montez was aware of any such medical documentation when he confiscated the handkerchief.

Considering the relevant factors, the record does demonstrate any disputed issues of material fact showing that Montez was deliberately indifferent to any serious medical needs. *See* Jett, 439 F.3d at 1096; Farmer, 511 U.S. at 837. Plaintiff's deliberate indifference claim is dismissed.

***Excessive Force***

Whenever a prison official is accused of using excessive force in violation of the cruel and unusual punishment clause of the Eighth Amendment, liability turns on whether force was

1  applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically
2  for the purpose of causing harm. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) (citing
3  Whitley v. Albers, 475 U.S. 312, 320-32 (1986)); see also Martinez v. Stanford, 323 F.3d
4  1178, 1184 (9th Cir. 2003). A showing of deliberate indifference is not enough. Whitley,
5  475 U.S. at 320. In determining whether the use of force was wanton and unnecessary, the
6  Court must consider the following factors: (1) the extent of injury suffered by the inmate; (2)
7  the need for application of force; (3) the relationship between that need and the amount of
8  force used; (4) the threat reasonably perceived by the responsible official; and (5) any efforts
9  made to temper the severity of a forceful response. Hudson, 503 U.S. at 7.[6]

As there is no genuine dispute as to any material fact pertaining to whether Montez used excessive force in violation of the Eighth Amendment, this claim is dismissed. Taking Plaintiff's admissible evidence as true and drawing reasonable inferences in his favor, Plaintiff has not demonstrated an Eighth Amendment violation. The following was admitted by Plaintiff in his declarations or deposition, or is otherwise undisputed: (1) Plaintiff was accompanied by two other inmates when he spoke to Montez in the evening on August 5, 2007 (i.e., after the handkerchief had already been confiscated earlier that day), and numerous other witnesses/inmates were in the vicinity while Plaintiff was attempting to explain (again) why he was entitled to the return of the handkerchief; (2) while speaking to

---

[6] See also Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002)(explaining the difference between excessive force claims related to non-prisoners arising under the Fourth Amendment and excessive force claims related to prisoners arising under the Eighth Amendment: "Our excessive force analysis begins with identification of the specific constitutional right allegedly infringed by the officers' use of force . . . When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment . . . Force does not amount to a constitutional violation in this respect if it is applied in a good faith effort to restore discipline and order and not maliciously and sadistically for the very purpose of causing harm . . . This standard necessarily involves a more culpable mental state than that required for excessive force claims arising under the Fourth Amendment's unreasonable seizures restriction . . . For this reason, under the Eighth Amendment, we look for malicious and sadistic force, not merely objectively unreasonable force. Under this heightened standard, the officials' liability for excessive force in this case is much more doubtful.")(internal quotes and citations omitted).

Montez, Plaintiff stated that Montez was abusing his authority and asked if Montez was retaliating against him; (3) Plaintiff was not in any form of restraints (such as handcuffs) at the time; (4) in response to this situation, Montez felt threatened to the extent that he found it advisable to conduct a clothed-body search; he grabbed Plaintiff, turned him around, and kicked his legs to spread them further apart, and then searched him; (5) Montez kicked Plaintiff's left leg approximately two or three times and his right leg approximately two times; the kicks were approximately 4 inches above Plaintiff's ankles and were not hard enough to make him fall down; (6) the search did not reveal any weapons. In addition, there is no medical documentation showing that this situation on August 5, 2007 caused Plaintiff to get blood clots in his legs, experience a collapsed vein, or continue on blood clotting medication; prior to August 5, 2007, Plaintiff already was experiencing problems with blood clotting in his legs, swelling of his legs, and was receiving medication for these problems. Considering the relevant factors, the record does not reflect any disputed issues of material fact showing an excessive force claim in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. *See* Hudson, 503 U.S. at 6-7; see also Martinez, 323 F.3d at 1184. Plaintiff's excessive force claim is dismissed.

### *Qualified Immunity*

A defendant in a § 1983 action is entitled to qualified immunity from damages for civil liability if his or her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The qualified-immunity inquiry asks if the constitutional right was clearly established at the relevant time. Saucier v. Katz, 533 U.S. 194, 201-02 (2001). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. at 201. "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*." Id. at 202 (emphasis added). A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Kennedy v. City of Ridgefield, 439 F.3d 1055, 1065 (9th Cir. 2006) (quoting Hope v. Pelzer, 536 U.S.

1 730, 739 (2002)).  It is not necessary that there be a prior case with the identical facts
2 showing that a right is clearly established; it is enough that there is preexisting law that
3 provides a defendant "fair warning" that his conduct was unlawful.  Kennedy, 439 F.3d at
4 1065.  Assuming, *arguendo*, that Plaintiff had shown violations for excessive force and
5 deliberate indifference, the Court would find that Montez was entitled to qualified immunity
6 because he violated no clearly established right in light of the unique circumstances in this
7 case.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED as follows:

(1) Defendant's motion for summary judgment is granted.

(2) This case is dismissed with prejudice.

(3) The Clerk of the Court shall enter judgment and close the file in this case.

DATED this 1st day of September, 2011.

Frank R. Zapata
Senior United States District Judge